UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVY HOTEL SAN DIEGO, LLC; KELLY HOSPITALITY, LLC,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>HOUSTON CASUALTY CO.,<br><br>　　　　　　　　　　Defendant. | Civil No.   10cv2183-L (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CLAIMS HANDLING DOCUMENTS**<br><br>[Doc. No. 43.] |
| HOUSTON CASUALTY CO.,<br><br>　　　　　　　　　　Counter Claimant<br><br>v.<br><br>IVY HOTEL SAN DIEGO, LLC; KELLY HOSPITALITY, LLC,<br><br>　　　　　　　　　　Counter Defendants | |

　　　　Plaintiffs and Counter-Defendants, Ivy Hotel San Diego, LLC and Kelly Hospitality, LLC (collectively "Ivy Hotel") filed a motion to compel Defendant and Counter-Claimant, Houston Casualty Company, ("HCC") to produce certain claims handling documents. (Doc. No. 43.) HCC filed an opposition to the motion. (Doc. No. 45.) Ivy Hotel filed a reply to the opposition. (Doc. No. 46.)

///

# I.

## BACKGROUND

Ivy Hotel filed this insurance coverage action alleging breach of contract and breach of the covenant of good faith and fair dealing. (Doc. No. 4.) Ivy Hotel alleges the following:

This matter involves a General Partners Liability Policy purchased from HCC for the policy period from December 1, 2006, through December 1, 2007 ("the Policy.") (*Id.* at ¶ 13.) The Policy provides coverage for loss, including the insureds' liability to third parties, as well as legal fees and expenses incurred in the defense of covered or potentially covered claims. (*Id.* at ¶ 14.) The Policy is subject to a $5 million net aggregate limit. (*Id.*) Pursuant to the Policy, HCC is obligated to pay up to $5 million in legal fees and expenses where there is a claim against the insured first made and reported during the policy period for a "Wrongful Act," which includes "any actual or alleged act, omission, misstatement or breach of duty." (*Id.* at ¶¶ 15-16.) In addition, HCC "is obligated to use all reasonable efforts to agree with the insured upon a fair and proper allocation of legal fees and expenses as between covered loss and uncovered loss." (*Id.* at ¶ 16.) Inasmuch as the insurer and insured disagree about the allocation, the insurer is obligated to 'advance on a current basis' legal fees and expenses it believes are covered. (*Id.*) "The allocation of the remaining legal fees and expenses is subject to resolution through negotiation, arbitration, or litigation." (*Id.*)

Ivy Hotel filed this action in order to recover legal fees and expenses incurred while defending against a cross-complaint filed in *630 F Street, LCC, et al. v. Krump Construction, Inc., et al.,* Case No. 37-2007-00072559-CU-BC-CTL ("Krump"). (*Id.* at ¶¶ 20-21.) The claims against Ivy Hotel in the Krump action allege a number of wrongful acts including, *inter alia*, breach of an implied agreement, breach of an implied warranty. (*Id.* at ¶ 22.) Ivy Hotel settled the Krump action in 2010. (*Id.* at ¶¶ 23-24.)

HCC initially denied Ivy Hotel's claim for coverage and defense of the *Krump* litigation. (*Id.* at ¶ 27.) Approximately 18 months later, HCC rescinded its coverage denial and agreed to reimburse Ivy Hotel for legal fees and expenses, subject to a full reservation of rights. (*Id.* at ¶ 28.) HCC also made a proposal for allocation legal fees and expenses as between covered and uncovered loss. (*Id.* at ¶ 29.) Ivy Hotel informed HCC that it did not agree with the proposed allocation of legal

fees and expenses. (*Id.*) Ivy Hotel submitted invoices totaling $6,963,248.48 in support of its claim for reimbursement. (*Id.* at ¶ 30.) HCC, however, "failed to review or pay [Ivy Hotel's] invoices for legal fees and expenses in a timely manner and failed to advance defense costs on a current basis, in material breach of its obligations. . . ." (*Id.* at ¶ 32.)

**Facts Relevant to Discovery Dispute**

On December 1, 2007, HCC received notice of Ivy Hotel's claim for coverage stemming from the cross-complaint filed in the *Krump* action (Doc. No. 45 at 6.) On December 27, 2007, HCC informed Ivy Hotel via letter that it retained Ross, Dixon & Bell, LLP to "evaluate and monitor" the coverage matter.[1] (*Id.* at 7; Doc. No. 45-4, Ex. A.) At that time, HCC had "not made a determination as to coverage under the Policy. (*Id.*) Monique M. Fuentes, Esq., ("Fuentes") was assigned to handle the matter. (*Id.*; *see also* Doc. No. 45-5, Ex. B.) On January 22, 2008, Fuentes wrote a letter to Ivy Hotel setting forth her preliminary coverage opinion. (*Id.*) The letter indicated that HCC did not believe that coverage was "presently available" for the Krump action but would be "pleased to review its position" if Ivy Hotel submitted additional information. (*Id.*) Fuentes communicated these opinions directly to Ivy Hotel's coverage counsel. (*Id.*)

On May 20, 2009, Ivy Hotel's insurance counsel sent Ms. Fuentes a letter requesting that HCC reconsider its refusal to defend. (Doc. No. 45-4, Ex. C.) Ms. Fuentes responded on July 10, 2009, and reiterated that HCC did not believe coverage was available for the matter. (*Id.* at Ex. D.) However, "as a showing of good faith," HCC agreed to revisit its coverage denial and agreed to reimburse Ivy Hotel for its costs and expenses incurred in defending the Krump action. (*Id.*) The agreement to reimburse was "subject to a full reservation of rights." (*Id.*) Once again Ms. Fuentes communicated directly with Ivy Hotel's insurance counsel. (*Id.*) Throughout 2009, Ivy Hotel's insurance counsel continued to communicate directly with Ms. Fuentes with respect to forwarding invoices reflecting defense costs and expenses incurred in the Krump action. (Doc. No. 43-6, Exs. 4-7.)

///

---

[1] In 2009 Ross, Dixon & Bell, LLP, merged into Troutman Sanders LLP. Throughout this order the Court refers to HCC's outside law firm as Troutman Sanders.

On December 18, 2009, Ivy Hotel sent Fuentes another letter regarding its concern that HCC had yet to provide reimbursement payments for incurred defense costs. (Doc. No. 43-6, Ex. 3.) On January 14, 2010, Fuentes informed Ivy Hotel that HCC completed its analysis of the invoices submitted on October 20 and 23, 2009. (Doc. No. 43-11, Ex. 8.) The letter was accompanied by a "Master Invoice Summary" indicating that HCC would reimburse Ivy Hotel $229,327.81. (*Id.* at 3.) According to HCC, this amount reflected its agreement to "reimburse 25 % of the fees and costs incurred solely in connection with [Ivy Hotel's] defense of the Krump Cross-Complaint." (*Id.* at 8.) Susan Leddy, HCC's Senior Claims Attorney, mailed the reimbursement check on February 11, 2010. (Doc. No. 45-4, Ex. G.)

## II.

### IVY HOTEL'S MOTION TO COMPEL

This discovery dispute stems from HCC's responses to Ivy Hotel's First Set of Requests for Production ("RFP"). (Doc. No. 43-13, Ex. 9.) Ivy Hotel requested documents concerning HCC's "handling of the claim for legal fees and expenses incurred in connection with the Krump Cross-Complaint." (Memo Ps&As ISO Mot Compel, Doc. No. 43-1 at 8.) HCC withheld a number of documents on the basis that they are protected by either the attorney-client privilege or work product doctrine. (*Id.*) HCC produced a 21 page privilege log identifying specific documents withheld. (Doc. No. 43-14, Ex. 10.) HCC, however, only produced and identified documents currently in HCC's physical custody or possession. (Memo Ps&As ISO Mot Compel, Doc. No. 43-1 at 9.) HCC does not believe it is obligated nor able to "force" Fuentes to turn over her work product. (Memo Ps&As ISO Opp'n, Doc. No. 45 at 8.)

The primary dispute between the parties is the scope and applicability of the attorney-client privilege and work product doctrine as they relate to Fuentes and Troutman Sanders—HCC's coverage counsel. Ivy Hotel contends HCC is improperly shielding its claims handling documents from discovery by claiming they are privileged when the facts indicate that the dominant purpose of the relationship between HCC and Fuentes's firm was to handle claims rather than act as outside coverage counsel. (Memo Ps&As ISO Mot Compel, Doc. No. 43-1 at 14.) Ivy Hotel further contends that the documents are not subject to work product protection because they were not prepared in anticipation of litigation. Finally, Ivy Hotel argues that even if HCC could establish that the

1  documents qualify as work product, they are discoverable because: (1) Ivy Hotel has a substantial
2  need for the materials and cannot, without undue hardship, obtain their substantial equivalent, and (2)
3  mental impressions are at issue in this case and Ivy Hotel has a compelling need for information
4  revealing those mental impressions. (*Id*. at 12-13.)

5  HCC counters that Ivy Hotel is not entitled to its communications with outside counsel
6  because they are privileged. (Memo Ps&As ISO Opp'n, Doc. No. 45 at 17.) In addition, HCC argues
7  that the documents in Fuentes' file constitute her work product and Ivy Hotel has not established
8  either a substantial or compelling need for the information. (*Id* at 18.)

9  **A.  Attorney-Client Privilege**

10  1. Legal Standard

11  In a federal action based on diversity jurisdiction, state law governs attorney-client
12  privilege claims. Fed.R.Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central*
13  *District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir.1993); *Oakes v. Halvorsen Marine Ltd.*,
14  179 F.R.D. 281, 284 (C.D. Cal.1998). Under California law, "evidentiary privileges such as the
15  attorney-client privilege are governed by statute." *HLC Props., Ltd. v. Superior Court*, 35 Cal.4th 54,
16  59, 24 Cal.Rptr.3d 199, 202, 105 P.3d 560 (2005); *Moeller v. Superior Court*, 16 Cal.4th 1124, 1129,
17  69 Cal.Rptr.2d 317, 320, 947 P.2d 279 (1997). California Evidence Code section 954, confers a
18  privilege on the client "to refuse to disclose, and to prevent another from disclosing, a confidential
19  communication between client and lawyer. . . . Cal.Evid. Code § 954. "Confidential communications
20  include information transmitted between attorney and client, and 'a legal opinion formed and the
21  advice given by the lawyer in the course of that relationship.' " *Calvert v. State Bar*, 54 Cal.3d 765,
22  779, 1 Cal.Rptr.2d 684, 691, 819 P.2d 424 (1991) (quoting Cal. Evid.Code § 952). "The attorney-
23  client privilege attaches to a confidential communication between the attorney and the client and bars
24  discovery of the communication irrespective of whether it includes unprivileged material." *Costco*
25  *Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 734 (2009). In determining whether the attorney-
26  client privilege attaches to communications, California courts look to the "dominant purpose of the
27  relationship" between the client and the attorney. *Id*. at 739.

28  "The party claiming the privilege has the burden of establishing the preliminary facts
necessary to support its exercise, i.e., a communication made in the course of the attorney-client

relationship." *Id.* at 733. "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Costco*, 47 Cal.4th at 733 (citing Cal. Evid.Code § 917(a)); *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110 (1997)).

### 2. Analysis

The ultimate question here is whether HCC's dominant purpose in retaining Fuentes's law firm—Troutman Sanders—was to receive legal advice. The attorney-client privilege would not be applicable if HCC's dominant purpose was to have Troutman Sanders provide business advice or act as an claims adjuster. *See Costco*, 47 Cal.4th at 735; *see also Umpqua Bank v. First Am. Title Ins. Co.*, No. CIV S-09-3208, 2011 WL 997212, *3 (E.D. Cal. Mar. 17, 2011). Yet, where the answer may be that the insurance company hired the attorney both to give a legal opinion and to take over the claims adjuster role, "the court must make a determination of which purpose was primary." *Umpqua*, 2011 WL 997212 at *3.

In support of its opposition to the motion to compel, HCC submitted declarations from Fuentes and Ms. Susan Leddy ("Leddy"). (Doc. Nos. 45-1; 45-2.) Fuentes avers that HCC retained her law firm to "act as coverage counsel on the Krump claim." (Decl. Fuentes, Doc. No. 45-1 at ¶ 3.) As coverage counsel, Fuentes and her firm provided legal analysis and advice to HCC, "including advice and analysis regarding allocation of attorneys' fees [Ivy Hotel] sought to be covered under the policy." (*Id.* at ¶ 5.) Fuentes disputes Ivy Hotel's contention that she acted as a claims adjuster on the Krump matter. (*Id.* at ¶ 3.) Similarly, Leddy's declaration asserts that she and Jennifer L. Saine, rather than Fuentes, were the claims adjusters responsible for the Krump matter. (Decl. Leddy, Doc. No. 45-2 at ¶¶ 1, 5, 10.) Leddy also states that she made clear to Ivy Hotel and its insurance agent that she was the claims adjuster on the matter.[2] (*Id.* at ¶ 12.)

///

Ivy Hotel, however, argues that it communicated almost exclusively with Fuentes regarding

---

[2] HCC's December 27, 2007 letter informed Ivy Hotel that it retained an outside law firm to "evaluate and monitor" the Krump matter. (Doc. No. 45-4, Ex. A.) Similarly, the July 10, 2009 letter from Troutman Sanders to Ivy Hotel explains that HCC retained the firm to "evaluate" the Krump claim. (Doc. No. 45-4, Ex.B.)

1  the Krump claim and received all of HCC's substantive coverage positions directly through Fuentes.
2  (Memo Ps&As ISO Mot Compel, Doc. No. 43-1 at 4.)  Ivy Hotel submits that Fuentes "was
3  predominately engaged in claims handing. "   (*Id*. at 5.)  As a result, Ivy Hotel argues that the
4  dominant purpose of the relationship between HCC and Troutman Sanders was to have the law firm
5  perform a business function, thus the attorney-client privilege should not apply. (*Id*. at 6.)

6  Both parties refer the Court to *Umpqua Bank v. First Am. Title Ins. Co.*, in support of their
7  respective positions. *Umpqua*, 2011 WL 997212, *1.  The issues presented in that case are nearly
8  identical to those raised here.  In *Umpqua*, the dispute also concerned the scope and applicability of
9  the attorney-client privilege and work product doctrines as they related to the insurance company's
10 outside coverage counsel. *Umpqua*, 2011 WL 997212 at *1.  Like in the instant case, the insurance
11 company hired an outside, independent attorney to provide a coverage opinion. *Id*.  The insured
12 sought the outside attorney's documents during discovery and argued that the attorney served as a
13 claims adjuster, therefore, his communications and documents did not deserve protection. *Id*.  In
14 order to resolve the dispute, the court had to determine what the insurance company's primary purpose
15 was in retaining outside counsel. *Id*. at *3.  Though the court found it "suspicious" that outside
16 counsel became the only point of contact between the insured and the insurance company; the court
17 determined that the "*dominant purpose of the relationship*" was attorney-client. *Id*. at 3-4 (emphasis
18 in original).  Thus, the communications between the insurance company and outside counsel were
19 privileged and not subject to disclosure in litigation.

20 In this case, like in *Umpqua*, Ivy Hotel's primary point of contact regarding the Krump
21 claim was Fuentes.  In addition, Fuentes sent the July 10, 2009 coverage opinion directly to Ivy
22 Hotel's counsel.  These facts suggest that Fuentes's role for HCC extended "beyond that of outside
23 claims counsel and into that of claims adjuster." *Umpqua*, 2011 WL 997212 at *3.  But the
24 intermingling of roles does not relieve the Court of the requirement that it determine the dominant
25 purpose of the relationship in order to decide whether the attorney-client privilege applies. *See*
26 *Costco*, 47 Cal.4th at 739-40.

27 ///
28 ///

Based on the declaration submitted by Leddy—HCC's senior claims attorney and the claims adjuster on the Krump matter—as well as the representations made by Fuentes, the record indicates that HCC hired Troutman Sanders to analyze and evaluate legal issues relating to coverage and not merely to serve as outside claims adjusters. Therefore, the Court finds that the *dominant purpose of the relationship* between HCC and Troutman Sanders was one of attorney-client and not claims adjuster-insurance company. *See id.* at 740; *see also Umpqua*, 2011 WL 997212 at *3.

Accordingly, the Court finds that HCC has met its burden of establishing the facts necessary to support a prima facie claim of attorney-client privilege for information that was transmitted between Troutman Sanders and HCC in the course of the attorney-client relationship. Ivy Hotel has not offered any facts or evidence to indicate that any of the presumptively privileged communications were not confidential or that the privilege does not apply for any other reasons. Thus, confidential information transmitted between Troutman Sanders and HCC need not be disclosed to Ivy Hotel.

**B.     Work Product Doctrine**

1. Legal Standard

Unlike the attorney-client privilege, the application of the work product doctrine in diversity cases is determined under federal law. *Frontier Refining, Inc. v. Gorman-Rupp, Inc.*, 136 F.3d 695, 702 n. 10 (10th Cir.1998); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir.1988). Pursuant to the work product doctrine, material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial may be immune from discovery. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509-12 (1947). One of the primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir.1992); *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir.1989). Like the attorney-client privilege, the party claiming work product immunity has the burden of proving the applicability of the doctrine.

 *A. Farber & Partners, Inc.*, 234 F.R.D. at 192; *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 644 (C.D. Cal. 2005).

"The phrase 'in anticipation of litigation' has both temporal and motivational components." *Equal Rights Center v. Post Properties, Inc.*, 247 F.R.D. 208, 210 (D. D.C. 2008) (quoting

1  Fed.R.Civ.P. 26(b)(3)). In determining whether the document is entitled to work product protection,
2  the Ninth Circuit looks to the totality of the circumstances surrounding the creation of the document.
3  *See In re Grand Jury Subpoena (Mark Torf/Torf Environmetnal Management)*, 357 F.3d 900, 908 (9th
4  Cir. 2004). At the time the attorney prepared the document, he or she " 'must at least have had a
5  subjective belief that litigation was a real possibility and that belief must have been objectively
6  reasonable.' " *Id.* (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir.1998)); *see also Fox v.*
7  *California Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988.) In addition, "the party claiming
8  the privilege must demonstrate that 'in light of the nature of the document and the factual situation
9  in the particular case, the document can fairly be said to have been prepared or obtained because of
10 the prospect of litigation.' " *Id.* (*quoting Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 587 n. 42
11 (D.C. Cir.1987)); *see also In re Grand Jury Subpoena*, 357 F.3d at 907. "Documents prepared in the
12 ordinary course of business or that would have been created in essentially similar form irrespective
13 of the litigation are not protectable as work product." *Umpqua*, 2011 WL 997212 at *4. An insurer's
14 claims files are presumptively not work product until a final decision is reached on an insured's claim.
15 *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991). To overcome the
16 presumption, "the insurer must demonstrate, by specific evidentiary proof of objective facts , that a
17 reasonable anticipation of litigation existed when the document was produced, and that the document
18 was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative
19 claim decision." *Id*. at 663-664.
20      In the event that documents do qualify for work-product protection, ordinary work product
21 may still be discovered if the party seeking the discovery demonstrates that there is substantial need
22 for the materials and there is no other means for obtaining that information without undue hardship.
23 Fed.R.Civ. P. 26(b)(3); *Hickman*, 329 U.S. at 511. Opinion work product may also be discovered
24 "when mental impressions are at issue in a case and the need for the material is compelling."
25 *Holmgren*, 976 F.2d at 577.
26      2. Analysis
27      HCC also objected to Ivy Hotel's request for production of documents on grounds that Ms.
28 Fuentes's documents reflect her work product. (Memo Ps&As ISO Opp'n, Doc. No. 45 at 18.)
Specifically, HCC contends that to the extent Fuentes's files reflect "strategy, analysis, and evaluation

1    of strengths and weaknesses of the coverage issues, such documents are work product and go to the
2    heart of HCC's counterclaim for declaratory relief." (*Id.*) In addition, HCC argues that Ivy Hotel has
3    not demonstrated a "substantial" or "compelling" need for the work product. (*Id.*)

4            In contrast, Ivy Hotel argues that the documents are not subject to work-product protection
5    because they were not prepared solely in anticipation of litigation. (Memo Ps&As ISO Mot Compel,
6    Doc. No. 43-1 at 12.) According to Ivy Hotel, HCC terminated its relationship with Troutman
7    Sanders and hired DLA Piper as coverage counsel when litigation began. (*Id.*) Even assuming that
8    the documents qualify as work product, Ivy Hotel maintains that it has a substantial need for the
9    materials and cannot, without undue hardship, obtain their substantial equivalent by other means. (*Id.*)
10   Moreover, because this case involves a claim of bad faith, Ivy Hotel contends that the strategy, mental
11   impressions and opinions regarding handling the claim is at issue, and its need for the information is
12   compelling. (*Id.* at 13.) Ivy Hotel also argues that HCC's mental impressions and opinions are also
13   at issue with respect to the breach of contract claim because the Policy obligates HCC to advance
14   defense costs that it 'believes to be covered under the Policy.' *Id.* (quoting First Amended Complaint,
15   Ex. A. § VII.B).

16           In the context of insurance claims files, "[t]he investigation and evaluation of claims is part
17   of the regular, ordinary and principal business of insurance companies." *Klee v. Whirpool Corp.,* 251
18   F.R.D. 507, 512 (S.D. Cal. 2006) (citation omitted). "[I]t can be presumed that 'documents which
19   were produced by an insurer for concurrent purposes before making a claims decision would have
20   been produced regardless of litigation purposes. . . .'" *Id.* (quoting *Stout v. Illinois Farmers Ins. Co.,*
21   150 F.R.D. 594, 605 (S.D. Ind. 1993)). To overcome the presumption, HCC "must demonstrate by
22   specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when
23   the document was produced, and that the document was prepared for [this] litigation, and not to arrive
24   at (or buttress a tentative) claim decision." *Harper*, 138 F.R.D. at 663-64.

25           As addressed above, HCC bears the burden of establishing that the documents being
26   withheld are protected by the work product doctrine. HCC, however, has not provided the Court with
27   any facts or argument to indicate that the documents were prepared in reasonable anticipation of
28   litigation. Rather, the record indicates that HCC retained Troutman Sanders to monitor and evaluate
     the Krump matter with respect to determining whether the claim was covered by the Policy. The

1   evidence provided to the Court indicates that Troutman Sanders' alleged work product was created
2   regardless of the threat of litigation. For instance, at the time HCC retained Troutman Sanders it had
3   "not made a determination as to coverage under the Policy." (Doc. No. 45-4, Ex. A.) Likewise, in
4   January 2008, when Ms. Fuentes sent Ivy Hotel her preliminary coverage analysis she explained that
5   this was not HCC's final determination regarding coverage. (*Id*. at Ex. B.) These letters indicate that
6   HCC had not reached a final decision on Ivy Hotel's claim and therefore was not creating documents
7   for litigation purposes. Also, Fuentes's declaration makes no mention of her providing legal advice
8   and analysis with respect to anticipated litigation. (Decl. Fuentes, Doc. No. 45-1.) Accordingly, HCC
9   has not met its burden of establishing that documents created by Troutman Sanders are protected by
10  the work product doctrine.

11          Nevertheless, even if HCC could establish that documents at issue were prepared in
12  anticipation of litigation, opinion work product is discoverable in this case because Ivy Hotel has
13  demonstrated that the mental impressions and opinions of Fuentes and her law firm are at issue and
14  the need for the material is compelling. *See Holmgren*, 976 F.2d at 577. Like in both *Holmgren* and
15  *Umpqua*, this is a bad faith insurance case, therefore the strategy, mental impressions and opinions
16  of the insurer's agents concerning handling the claim are at issue. *Holmgren*, 976 F.2d at 577;
17  *Umpqua*, 2011 WL 997212, *5. In this case, Fuentes and her law firm were, at the very least, agents
18  of HCC and involved in evaluating the claim. As such, Fuentes's strategies, mental impressions, and
19  opinions are at issue, and Ivy Hotel's need for information revealing those strategies, impressions and
20  opinions is compelling because Ivy Hotel has no other way to probe the reasons HCC denied Ivy
21  Hotel's claim. Compelling need exists whenever "information is within the exclusive control of the
22  party from whom discovery is sought, regardless of whether the information might also be obtained
23  from that party through depositions, interrogatories or document production." *In re Sunrise Securities*
24  *Litigation*, 130 F.R.D. 560, 569 (E.D. Pa. 1989). The mental impressions and opinions of HCC's
25  agents are certainly within the exclusive control of HCC.

26          For all of the reasons stated above, documents responsive to Ivy Hotel's RFP Nos. 10, 12,
27  and 27 that are not protected by the attorney-client privilege must be produced. *See* Memo Ps&As
28  ISO Mot Compel, Doc. No. 43-1 at 9. To the extent it is not clear whether documents reflecting
    attorney strategy, impressions, or opinions also fall under the protection of the attorney-client

privilege, HCC

is ordered to produce those documents for the Court's *in camera review*. The Court will review the documents and determine whether they are solely work product or are attorney-client communications.

### C. Custody or Control

#### 1. Legal Standard

Federal Rule of Civil Procedure 34(a)(1) permits a party to serve on any other party a request to inspect or copy documents or electronically stored information within the responding party's "possession, custody, or control." Fed.R.Civ.P. 34(a)(1). "Documents are deemed to be within the possession, custody or control of a party and subject to a request for production if the party has actual possession, custody or control or has the legal right to obtain the documents on demand." *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476 (D. Col. 2007). "Therefore, Rule 34(a) enables a party seeking discovery to require production of documents beyond the actual possession of the opposing party if such party has retained any right or ability to influence the person in whose possession the documents lie." *Id*. at 476-77. Restatement (Third) of Law Governing Lawyers (2000) section 46 states: "On request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse.[3] "The party seeking production of documents bears the burden of demonstrating that the other party has control over the documents sought." *In re Flag Telecom Holdings, Ltd. Securities Litgation*, 236 F.R.D. 177, (S.D. N.Y. 2006).

#### 2. Analysis

In response to Ivy Hotel's RFP, HCC did not request that Fuentes or Troutman Sanders make their files available for review and possible production. (Memo Ps&As ISO Opp'n, Doc. No. 45 at 8.) HCC contends that the files are not within its possession, custody, or control because Troutman Sanders is in possession of the documents and that HCC is not legally entitled to the former

---

[3] Examples of "substantial grounds" include situations where disclosure would violate a duty owed to a third-party or internal firm documents purely intended for law office use, e.g., assignment of particular lawyers to the matter.

1 attorneys' work product. (*Id.*) Ivy Hotel, argues that HCC is required to search Troutman Sanders
2 files and records and produce responsive documents. (Memo of Ps&As ISO Mot. Compel, Doc. No.
3 43-1 at 10.)

4 In *Moreno v. Autozone, Inc.*, 2008 WL 906510, *1 (N.D. Cal. April 1, 2008), the court
5 rejected plaintiff's argument that she could not be compelled to produce documents because her
6 former counsel was in possession of the documents. The court found that "[p]laintiff should have the
7 legal right to obtain the documents from former counsel on demand." *Id.* Similarly, the court in
8 *Convertino v. U.S. Dept. of Justice*, 565 F. Supp. 2d 10, 14 (D. D.C. 2008), found that responsive
9 documents in the possession of an attorney representing the responding party on another legal matter
10 were within the party's control as that term is understood in discovery. In addition, in *Clark v. Milan*,
11 the court held that a lawyer may not invoke work product immunity against his own client in regard
12 to work product created during the course of representing that client. . . ." 847 F. Supp. 424, 427 (S.D.
13 Va. 1994); *but see Hobley v. Burge*, 433 F.3d 946 (7th Cir. 2006) (finding sanctions imposed against
14 former law firm inappropriate where the responding party never asked the firm for the materials).

15 The circumstances of this case indicate that responsive documents located in Troutman
16 Sanders and Fuentes's files are within HCC's control because it maintains the right and ability to
17 influence the former law firm to allow inspection and copying of the materials. HCC, as the law
18 firm's former client, paid for the creation of the work product and is entitled to inspect and copy the
19 materials.

20 That being so, and because this Court has determined that Troutman Sanders documents
21 are either not protected work product or are discoverable to the extent they reflect the mental
22 impressions and opinions of HCC's agents; the Court orders production of the materials consistent
23 with this decision. Accordingly, documents responsive to Ivy Hotel's RFP Nos. 10, 12, and 27 that
24 are in the physical custody or possession of Troutman Sanders and are not protected by the attorney-
25 client privilege must be produced. Although attorney-client communications need not be disclosed,
26 HCC is required to produce a privilege log for all materials being withheld. To the extent that it is
27 not clear whether any documents solely constitute work product, HCC must produce the documents
28 for the Court's *in camera* review. The Court will then determine whether the documents must be
disclosed or may be withheld as privileged attorney-client communications.

1   ///

2   ///

3

## III.

### CONCLUSION

For all of the reasons stated above, the Court **GRANTS in part and DENIES in part** Ivy Hotel's motion to compel. The Court finds that confidential communications between Troutman Sanders and HCC are protected by the attorney-client privilege and need not be disclosed to Ivy Hotel. Conversely, the Court finds that Troutman Sanders' internal documents and materials prepared during the evaluation and monitoring of the Krump matter do not constitute protected work product because HCC has not established that they were prepared in anticipation of litigation. Moreover, to the extent that Troutman Sanders prepared documents and materials in anticipation of litigation, those materials are discoverable because the mental impressions and opinions of HCC's agents are at issue in this case, and Ivy Hotel has a compelling need for the information. Finally, documents and information located in the physical custody or possession of Troutman Sanders must be produced pursuant to the terms of this decision.

Accordingly, HCC is ORDERED to supplement its production and provide Ivy Hotel with documents responsive to RFP Nos. 10, 12 and 27 currently in the physical possession and custody of Troutman Sanders. The documents as well as a privilege log must be produced no later than **November 4, 2011.** To the extent that it is not clear whether any of Troutman Sanders's documents solely constitute work product, HCC must produce those documents for the Court's *in camera* review no later than **November 4, 2011**. The Court will then determine whether the documents must be disclosed to Ivy Hotel or may be withheld as privileged attorney-client communications.

IT IS SO ORDERED.

DATED: October 17, 2011

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court