UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVY HOTEL SAN DIEGO, LLC; KELLY HOSPITALITY, LLC, | Civil No.    10cv2183-L (BGS) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CLAIMS HANDLING DOCUMENTS** |
| HOUSTON CASUALTY CO., | |
| Defendant. | **[Doc. No. 43.]** |
| HOUSTON CASUALTY CO., | |
| Counter Claimant | |
| v. | |
| IVY HOTEL SAN DIEGO, LLC; KELLY HOSPITALITY, LLC, | |
| Counter Defendants | |

Plaintiffs and Counter-Defendants, Ivy Hotel San Diego, LLC and Kelly Hospitality, LLC (collectively "Ivy Hotel") filed a motion to compel Defendant and Counter-Claimant, Houston Casualty Company, ("HCC") to produce certain claims handling documents.  (Doc. No. 43.)  HCC filed an opposition to the motion.  (Doc. No. 45.)  Ivy Hotel filed a reply to the opposition.  (Doc. No. 46.)

///

# I.

## BACKGROUND

Ivy Hotel filed this insurance coverage action alleging breach of contract and breach of the covenant of good faith and fair dealing. (Doc. No. 4.) Ivy Hotel alleges the following:

This matter involves a General Partners Liability Policy purchased from HCC for the policy period from December 1, 2006, through December 1, 2007 ("the Policy.") (*Id.* at ¶ 13.) The Policy provides coverage for loss, including the insureds' liability to third parties, as well as legal fees and expenses incurred in the defense of covered or potentially covered claims. (*Id.* at ¶ 14.) The Policy is subject to a $5 million net aggregate limit. (*Id.*) Pursuant to the Policy, HCC is obligated to pay up to $5 million in legal fees and expenses where there is a claim against the insured first made and reported during the policy period for a "Wrongful Act," which includes "any actual or alleged act, omission, misstatement or breach of duty." (*Id.* at ¶¶ 15-16.) In addition, HCC "is obligated to use all reasonable efforts to agree with the insured upon a fair and proper allocation of legal fees and expenses as between covered loss and uncovered loss." (*Id.* at ¶ 16.) Inasmuch as the insurer and insured disagree about the allocation, the insurer is obligated to 'advance on a current basis' legal fees and expenses it believes are covered. (*Id.*) "The allocation of the remaining legal fees and expenses is subject to resolution through negotiation, arbitration, or litigation." (*Id.*)

Ivy Hotel filed this action in order to recover legal fees and expenses incurred while defending against a cross-complaint filed in *630 F Street, LCC, et al. v. Krump Construction, Inc., et al.,* Case No. 37-2007-00072559-CU-BC-CTL ("Krump"). (*Id.* at ¶¶ 20-21.) The claims against Ivy Hotel in the Krump action allege a number of wrongful acts including, *inter alia*, breach of an implied agreement, breach of an implied warranty. (*Id.* at ¶ 22.) Ivy Hotel settled the Krump action in 2010. (*Id.* at ¶¶ 23-24.)

HCC initially denied Ivy Hotel's claim for coverage and defense of the *Krump* litigation. (*Id.* at ¶ 27.) Approximately 18 months later, HCC rescinded its coverage denial and agreed to reimburse Ivy Hotel for legal fees and expenses, subject to a full reservation of rights. (*Id.* at ¶ 28.) HCC also made a proposal for allocation legal fees and expenses as between covered and uncovered loss. (*Id.* at ¶ 29.) Ivy Hotel informed HCC that it did not agree with the proposed allocation of legal

1   fees and expenses. (*Id.*) Ivy Hotel submitted invoices totaling $6,963,248.48 in support of its claim

2   for reimbursement. (*Id.* at ¶ 30.) HCC, however, "failed to review or pay [Ivy Hotel's] invoices for

3   legal fees and expenses in a timely manner and failed to advance defense costs on a current basis, in

4   material breach of its obligations. . . ." (*Id.* at ¶ 32.)

5   **Facts Relevant to Discovery Dispute**

6   On December 1, 2007, HCC received notice of Ivy Hotel's claim for coverage stemming

7   from the cross-complaint filed in the *Krump* action (Doc. No. 45 at 6.) On December 27, 2007, HCC

8   informed Ivy Hotel via letter that it retained Ross, Dixon & Bell, LLP to "evaluate and monitor" the

9   coverage matter.[1] (*Id.* at 7; Doc. No. 45-4, Ex. A.) At that time, HCC had "not made a determination

10   as to coverage under the Policy. (*Id.*) Monique M. Fuentes, Esq., ("Fuentes") was assigned to handle

11   the matter. (*Id.*; *see also* Doc. No. 45-5, Ex. B.) On January 22, 2008, Fuentes wrote a letter to Ivy

12   Hotel setting forth her preliminary coverage opinion. (*Id.*)  The letter indicated that HCC did not

13   believe that coverage was "presently available" for the Krump action but would be "pleased to review

14   its position" if Ivy Hotel submitted additional information. (*Id.*) Fuentes communicated these

15   opinions directly to Ivy Hotel's coverage counsel. (*Id.*)

16   On May 20, 2009, Ivy Hotel's insurance counsel sent Ms. Fuentes a letter requesting that

17   HCC reconsider its refusal to defend. (Doc. No. 45-4, Ex. C.) Ms. Fuentes responded on July 10,

18   2009, and reiterated that HCC did not believe coverage was available for the matter. (*Id.* at Ex. D.)

19   However, "as a showing of good faith," HCC agreed to revisit its coverage denial and agreed to

20   reimburse Ivy Hotel for its costs and expenses incurred in defending the Krump action. (*Id.*) The

21   agreement to reimburse was "subject to a full reservation of rights." (*Id.*) Once again Ms. Fuentes

22   communicated directly with Ivy Hotel's insurance counsel. (*Id.*) Throughout 2009, Ivy Hotel's

23   insurance counsel continued to communicate directly with Ms. Fuentes with respect to forwarding

24   invoices reflecting defense costs and expenses incurred in the Krump action. (Doc. No. 43-6, Exs.

25   4-7.)

26   ///

27

28   [1]   In 2009 Ross, Dixon & Bell, LLP, merged into Troutman Sanders LLP.
      Throughout this order the Court refers to HCC's outside law firm as Troutman
      Sanders.

10cv2183-L

1   On December 18, 2009, Ivy Hotel sent Fuentes another letter regarding its concern that

2   HCC had yet to provide reimbursement payments for incurred defense costs. (Doc. No. 43-6, Ex. 3.)

3   On January 14, 2010, Fuentes informed Ivy Hotel that HCC completed its analysis of the invoices

4   submitted on October 20 and 23, 2009. (Doc. No. 43-11, Ex. 8.) The letter was accompanied by a

5   "Master Invoice Summary" indicating that HCC would reimburse Ivy Hotel $229,327.81. (*Id.* at 3.)

6   According to HCC, this amount reflected its agreement to "reimburse 25 % of the fees and costs

7   incurred solely in connection with [Ivy Hotel's] defense of the Krump Cross-Complaint." (*Id.* at 8.)

8   Susan Leddy, HCC's Senior Claims Attorney, mailed the reimbursement check on February 11, 2010.

9   (Doc. No. 45-4, Ex. G.)

10                                          **II.**

11                          **IVY HOTEL'S MOTION TO COMPEL**

12   This discovery dispute stems from HCC's responses to Ivy Hotel's First Set of Requests

13   for Production ("RFP"). (Doc. No. 43-13, Ex. 9.) Ivy Hotel requested documents concerning HCC's

14   "handling of the claim for legal fees and expenses incurred in connection with the Krump Cross-

15   Complaint." (Memo Ps&As ISO Mot Compel, Doc. No. 43-1 at 8.) HCC withheld a number of

16   documents on the basis that they are protected by either the attorney-client privilege or work product

17   doctrine. (*Id.*) HCC produced a 21 page privilege log identifying specific documents withheld. (Doc.

18   No. 43-14, Ex. 10.) HCC, however, only produced and identified documents currently in HCC's

19   physical custody or possession. (Memo Ps&As ISO Mot Compel, Doc. No. 43-1 at 9.) HCC does

20   not believe it is obligated nor able to "force" Fuentes to turn over her work product. (Memo Ps&As

21   ISO Opp'n, Doc. No. 45 at 8.)

22   The primary dispute between the parties is the scope and applicability of the attorney-client

23   privilege and work product doctrine as they relate to Fuentes and Troutman Sanders—HCC's

24   coverage counsel. Ivy Hotel contends HCC is improperly shielding its claims handling documents

25   from discovery by claiming they are privileged when the facts indicate that the dominant purpose of

26   the relationship between HCC and Fuentes's firm was to handle claims rather than act as outside

27   coverage counsel. (Memo Ps&As ISO Mot Compel, Doc. No. 43-1 at 14.) Ivy Hotel further contends

28   that the documents are not subject to work product protection because they were not prepared in

anticipation of litigation. Finally, Ivy Hotel argues that even if HCC could establish that the

documents qualify as work product, they are discoverable because: (1) Ivy Hotel has a substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent, and (2) mental impressions are at issue in this case and Ivy Hotel has a compelling need for information revealing those mental impressions.  (*Id*. at 12-13.)

HCC counters that Ivy Hotel is not entitled to its communications with outside counsel because they are privileged.  (Memo Ps&As ISO Opp'n, Doc. No. 45 at 17.)  In addition, HCC argues that the documents in Fuentes' file constitute her work product and Ivy Hotel has not established either a substantial or compelling need for the information. (*Id* at 18.)

**A.      Attorney-Client Privilege**

1. Legal Standard

In a federal action based on diversity jurisdiction, state law governs attorney-client privilege claims. Fed.R.Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir.1993); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal.1998). Under California law, "evidentiary privileges such as the attorney-client privilege are governed by statute." *HLC Props., Ltd. v. Superior Court*, 35 Cal.4th 54, 59, 24 Cal.Rptr.3d 199, 202, 105 P.3d 560 (2005); *Moeller v. Superior Court*, 16 Cal.4th 1124, 1129, 69 Cal.Rptr.2d 317, 320, 947 P.2d 279 (1997).  California Evidence Code section 954, confers a privilege on the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer. . . . Cal.Evid. Code § 954.  "Confidential communications include information transmitted between attorney and client, and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.' " *Calvert v. State Bar*, 54 Cal.3d 765, 779, 1 Cal.Rptr.2d 684, 691, 819 P.2d 424 (1991) (quoting Cal. Evid.Code § 952). "The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 734 (2009).  In determining whether the attorney-client privilege attaches to communications, California courts look to the "dominant purpose of the relationship" between the client and the attorney.  *Id*. at 739.

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of the attorney-client

1  relationship." *Id.* at 733. "Once that party establishes facts necessary to support a prima facie claim

2  of privilege, the communication is presumed to have been made in confidence and the opponent of

3  the claim of privilege has the burden of proof to establish the communication was not confidential or

4  that the privilege does not for other reasons apply." *Costco*, 47 Cal.4th at 733 (citing Cal. Evid.Code

5  § 917(a)); *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110 (1997).

## 2. Analysis

7  The ultimate question here is whether HCC's dominant purpose in retaining Fuentes's law

8  firm—Troutman Sanders—was to receive legal advice.  The attorney-client privilege would not be

9  applicable if HCC's dominant purpose was to have Troutman Sanders provide business advice or act

10  as an claims adjuster.  *See Costco*, 47 Cal.4th at 735; *see also Umpqua Bank v. First Am. Title Ins.*

11  *Co.*, No. CIV S-09-3208, 2011 WL 997212, *3 (E.D. Cal. Mar. 17, 2011).  Yet, where the answer may

12  be that the insurance company hired the attorney both to give a legal opinion and to take over the

13  claims adjuster role, "the court must make a determination of which purpose was primary." *Umpqua*,

14  2011 WL 997212 at *3.

15  In support of its opposition to the motion to compel, HCC submitted declarations from

16  Fuentes and Ms. Susan Leddy ("Leddy").  (Doc. Nos. 45-1; 45-2.)  Fuentes avers that HCC retained

17  her law firm to "act as coverage counsel on the Krump claim."  (Decl. Fuentes, Doc. No. 45-1 at ¶ 3.)

18  As coverage counsel, Fuentes and her firm provided legal analysis and advice to HCC, "including

19  advice and analysis regarding allocation of attorneys' fees [Ivy Hotel] sought to be covered under the

20  policy."  (*Id.* at ¶ 5.)  Fuentes disputes Ivy Hotel's contention that she acted as a claims adjuster on

21  the Krump matter.  (*Id.* at ¶ 3.)  Similarly, Leddy's declaration asserts that she and Jennifer L. Saine,

22  rather than Fuentes, were the claims adjusters responsible for the Krump matter.  (Decl. Leddy, Doc.

23  No. 45-2 at ¶¶ 1, 5, 10.)  Leddy also states that she made clear to Ivy Hotel and its insurance agent that

24  she was the claims adjuster on the matter.[2]  (*Id.* at ¶ 12.)

25  ///

26  Ivy Hotel, however, argues that it communicated almost exclusively with Fuentes regarding

27
28  [2]  HCC's December 27, 2007 letter informed Ivy Hotel that it retained an outside law firm to "evaluate and monitor" the Krump matter.  (Doc. No. 45-4, Ex. A.) Similarly, the July 10, 2009 letter from Troutman Sanders to Ivy Hotel explains that HCC retained the firm to "evaluate" the Krump claim.  (Doc. No. 45-4, Ex.B.)

the Krump claim and received all of HCC's substantive coverage positions directly through Fuentes. (Memo Ps&As ISO Mot Compel, Doc. No. 43-1 at 4.)  Ivy Hotel submits that Fuentes "was predominately engaged in claims handing. "   (*Id*. at 5.)  As a result, Ivy Hotel argues that the dominant purpose of the relationship between HCC and Troutman Sanders was to have the law firm perform a business function, thus the attorney-client privilege should not apply.  (*Id*. at 6.)

Both parties refer the Court to *Umpqua Bank v. First Am. Title Ins. Co.*, in support of their respective positions. *Umpqua*, 2011 WL 997212, *1.  The issues presented in that case are nearly identical to those raised here.  In  *Umpqua*, the dispute also concerned the scope and applicability of the attorney-client privilege and work product doctrines as they related to the insurance company's outside coverage counsel.  *Umpqua*, 2011 WL 997212 at *1.  Like in the instant case, the insurance company hired an outside, independent attorney to provide a coverage opinion.  *Id*.  The insured sought the outside attorney's documents during discovery and argued that the attorney served as a claims adjuster, therefore,  his communications and documents did not deserve protection.  *Id*.  In order to resolve the dispute, the court had to determine what the insurance company's primary purpose was in retaining outside counsel.  *Id*. at *3.  Though the court found it "suspicious" that outside counsel became the only point of contact between the insured and the insurance company; the court determined that the "*dominant purpose of the relationship*" was attorney-client.  *Id*. at 3-4 (emphasis in original).  Thus, the communications between the insurance company and outside counsel were privileged and not subject to disclosure in litigation.

In this case, like in *Umpqua*, Ivy Hotel's primary point of contact regarding the Krump claim was Fuentes.  In addition, Fuentes sent the July 10, 2009 coverage opinion directly to Ivy Hotel's counsel.  These facts suggest that Fuentes's role for HCC extended "beyond that of outside claims counsel and into that of claims adjuster."  *Umpqua*, 2011 WL 997212 at *3.  But the intermingling of roles does not relieve the Court of the requirement that it determine the dominant purpose of the relationship in order to decide whether the attorney-client privilege applies.  *See Costco*, 47 Cal.4th at 739-40.

///

///

10cv2183-L

1    Based on the declaration submitted by Leddy—HCC's senior claims attorney and the

2    claims adjuster on the Krump matter—as well as the representations made by Fuentes, the record

3    indicates that HCC hired Troutman Sanders to analyze and evaluate legal issues relating to coverage

4    and not merely to serve as outside claims adjusters.  Therefore, the Court finds that the *dominant*

5    *purpose of the relationship* between HCC and Troutman Sanders was one of attorney-client and not

6    claims adjuster-insurance company.  *See id*. at 740; *see also Umpqua*, 2011 WL 997212 at *3.

7    Accordingly, the Court finds that HCC has met its burden of establishing the facts necessary

8    to support a prima facie claim of attorney-client privilege for information that was transmitted

9    between Troutman Sanders and HCC in the course of the attorney-client relationship.  Ivy Hotel has

10   not offered any facts or evidence to indicate that any of the presumptively privileged communications

11   were not confidential or that the privilege does not apply for any other reasons.  Thus, confidential

12   information transmitted between Troutman Sanders and HCC need not be disclosed to Ivy Hotel.

13   **B.      Work Product Doctrine**

14   1. Legal Standard

15   Unlike the attorney-client privilege, the application of the work product doctrine in

16   diversity cases is determined under federal law.  *Frontier Refining, Inc. v. Gorman-Rupp, Inc.*, 136

17   F.3d 695, 702 n. 10 (10th Cir.1998); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d

18   Cir.1988). Pursuant to the work product doctrine, material obtained and prepared by an attorney or

19   the attorney's agent in anticipation of litigation or preparation for trial may be immune from

20   discovery. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509-12 (1947). One of the

21   primary purposes of the work product doctrine is to prevent one party exploiting the other party's

22   efforts to prepare for litigation. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th

23   Cir.1992); *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir.1989).  Like

24   the attorney-client privilege, the party claiming work product immunity has the burden of proving the

25   applicability of the doctrine.

26    *A. Farber & Partners, Inc.*, 234 F.R.D. at 192; *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 644 (C.D.

27   Cal. 2005).

28    "The phrase 'in anticipation of litigation' has both temporal and motivational components."

*Equal Rights Center v. Post Properties, Inc.*, 247 F.R.D. 208, 210 (D. D.C. 2008) (quoting

8

10cv2183-L

1    Fed.R.Civ.P. 26(b)(3)).  In determining whether the document is entitled to work product protection,

2    the Ninth Circuit looks to the totality of the circumstances surrounding the creation of the document.

3    *See In re Grand Jury Subpoena (Mark Torf/Torf Environmetnal Management)*, 357 F.3d 900, 908 (9th

4    Cir. 2004).  At the time the attorney prepared the document, he or she " 'must at least have had a

5    subjective belief that litigation was a real possibility and that belief must have been objectively

6    reasonable.' "  *Id.* (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir.1998)); *see also Fox v.*

7    *California Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988.)  In addition, "the party claiming

8    the privilege must demonstrate that 'in light of the nature of the document and the factual situation

9    in the particular case, the document can fairly be said to have been prepared or obtained because of

10   the prospect of litigation.' "  *Id.*  (*quoting Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 587 n. 42

11   (D.C. Cir.1987)); *see also In re Grand Jury Subpoena*, 357 F.3d at 907.  "Documents prepared in the

12   ordinary course of business or that would have been created in essentially similar form irrespective

13   of the litigation are not protectable as work product."  *Umpqua*, 2011 WL 997212 at *4.  An insurer's

14   claims files are presumptively not work product until a final decision is reached on an insured's claim.

15   *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991).   To overcome the

16   presumption, "the insurer must demonstrate, by specific evidentiary proof of objective facts , that a

17   reasonable anticipation of litigation existed when the document was produced, and that the document

18   was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative

19   claim decision."  *Id.* at 663-664.

20          In the event that documents do qualify for work-product protection, ordinary work product

21   may still be discovered if the party seeking the discovery demonstrates that there is substantial need

22   for the materials and there is no other means for obtaining that information without undue hardship.

23   Fed.R.Civ. P. 26(b)(3); *Hickman*, 329 U.S. at 511.  Opinion work product may also be discovered

24   "when mental impressions are at issue in a case and the need for the material is compelling."

25   *Holmgren*, 976 F.2d at 577.

26                  2. Analysis

27          HCC also objected to Ivy Hotel's request for production of documents on grounds that Ms.

28   Fuentes's documents reflect her work product.  (Memo Ps&As ISO Opp'n, Doc. No. 45 at 18.)

     Specifically, HCC contends that to the extent Fuentes's files reflect "strategy, analysis, and evaluation

                                        9

of strengths and weaknesses of the coverage issues, such documents are work product and go to the heart of HCC's counterclaim for declaratory relief." (*Id.*) In addition, HCC argues that Ivy Hotel has not demonstrated a "substantial" or "compelling" need for the work product. (*Id.*)

In contrast, Ivy Hotel argues that the documents are not subject to work-product protection because they were not prepared solely in anticipation of litigation. (Memo Ps&As ISO Mot Compel, Doc. No. 43-1 at 12.) According to Ivy Hotel, HCC terminated its relationship with Troutman Sanders and hired DLA Piper as coverage counsel when litigation began. (*Id.*) Even assuming that the documents qualify as work product, Ivy Hotel maintains that it has a substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent by other means. (*Id.*) Moreover, because this case involves a claim of bad faith, Ivy Hotel contends that the strategy, mental impressions and opinions regarding handling the claim is at issue, and its need for the information is compelling. (*Id.* at 13.) Ivy Hotel also argues that HCC's mental impressions and opinions are also at issue with respect to the breach of contract claim because the Policy obligates HCC to advance defense costs that it 'believes to be covered under the Policy.' *Id.* (quoting First Amended Complaint, Ex. A. § VII.B).

In the context of insurance claims files, "[t]he investigation and evaluation of claims is part of the regular, ordinary and principal business of insurance companies." *Klee v. Whirpool Corp.,* 251 F.R.D. 507, 512 (S.D. Cal. 2006) (citation omitted). "[I]t can be presumed that 'documents which were produced by an insurer for concurrent purposes before making a claims decision would have been produced regardless of litigation purposes. . . .'" *Id.* (quoting *Stout v. Illinois Farmers Ins. Co.,* 150 F.R.D. 594, 605 (S.D. Ind. 1993)). To overcome the presumption, HCC "must demonstrate by specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared for [this] litigation, and not to arrive at (or buttress a tentative) claim decision." *Harper*, 138 F.R.D. at 663-64.

As addressed above, HCC bears the burden of establishing that the documents being withheld are protected by the work product doctrine. HCC, however, has not provided the Court with any facts or argument to indicate that the documents were prepared in reasonable anticipation of litigation. Rather, the record indicates that HCC retained Troutman Sanders to monitor and evaluate the Krump matter with respect to determining whether the claim was covered by the Policy. The

1    evidence provided to the Court indicates that Troutman Sanders' alleged work product was created

2    regardless of the threat of litigation.  For instance, at the time HCC retained Troutman Sanders it had

3    "not made a determination as to coverage under the Policy."  (Doc. No. 45-4, Ex. A.)  Likewise, in

4    January 2008, when Ms. Fuentes sent Ivy Hotel her preliminary coverage analysis she explained that

5    this was not HCC's final determination regarding coverage.  (*Id*. at Ex. B.)  These letters indicate that

6    HCC had not reached a final decision on Ivy Hotel's claim and therefore was not creating documents

7    for litigation purposes.  Also, Fuentes's declaration makes no mention of her providing legal advice

8    and analysis with respect to anticipated litigation. (Decl. Fuentes, Doc. No. 45-1.)  Accordingly, HCC

9    has not met its burden of establishing that documents created by Troutman Sanders are protected by

10   the work product doctrine.

11          Nevertheless, even if HCC could establish that documents at issue were prepared in

12   anticipation of litigation, opinion work product is discoverable in this case because Ivy Hotel has

13   demonstrated that the mental impressions and opinions of Fuentes and her law firm are at issue and

14   the need for the material is compelling.  *See Holmgren*, 976 F.2d at 577.  Like in both *Holmgren* and

15   *Umpqua*, this is a bad faith insurance case, therefore the strategy, mental impressions and opinions

16   of the insurer's agents concerning handling the claim are at issue.  *Holmgren*, 976 F.2d at 577;

17   *Umpqua*, 2011 WL 997212, *5.  In this case, Fuentes and her law firm were, at the very least, agents

18   of HCC and involved in evaluating the claim.  As such, Fuentes's strategies, mental impressions, and

19   opinions are at issue, and Ivy Hotel's need for information revealing those strategies, impressions and

20   opinions is compelling because Ivy Hotel has no other way to probe the reasons HCC denied Ivy

21   Hotel's claim.  Compelling need exists whenever "information is within the exclusive control of the

22   party from whom discovery is sought, regardless of whether the information might also be obtained

23   from that party through depositions, interrogatories or document production." *In re Sunrise Securities*

24   *Litigation*, 130 F.R.D. 560, 569 (E.D. Pa. 1989).  The mental impressions and opinions of HCC's

25   agents are certainly within the exclusive control of HCC.

26          For all of the reasons stated above, documents responsive to Ivy Hotel's RFP Nos. 10, 12,

27   and 27 that are not protected by the attorney-client privilege must be produced.  *See* Memo Ps&As

28   ISO Mot Compel, Doc. No. 43-1 at 9.  To the extent it is not clear whether documents reflecting

     attorney strategy, impressions, or opinions also fall under the protection of the attorney-client

1    privilege, HCC

2

3    is ordered to produce those documents for the Court's *in camera review*.  The Court will review the

4    documents and determine whether they are solely work product or are attorney-client communica-

5    tions.

6            **C.     Custody or Control**

7                    1. Legal Standard

8            Federal Rule of Civil Procedure 34(a)(1) permits a party to serve on any other party a

9    request to inspect or copy documents or electronically stored information within the responding

10   party's "possession, custody, or control."  Fed.R.Civ.P. 34(a)(1).  "Documents are deemed to be

11   within the possession, custody or control of a party and subject to a request for production if the party

12   has actual possession, custody or control or has the legal right to obtain the documents on demand."

13   *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476 (D. Col. 2007).  "Therefore, Rule 34(a) enables a

14   party seeking discovery to require production of documents beyond the actual possession of the

15   opposing party if such party has retained any right or ability to influence the person in whose

16   possession the documents lie." *Id*. at 476-77.  Restatement (Third) of Law Governing Lawyers (2000)

17   section 46 states: "On request, a lawyer must allow a client or former client to inspect and copy any

18   document possessed by the lawyer relating to the representation, unless substantial grounds exist to

19   refuse.[3] "The party seeking production of documents bears the burden of demonstrating that the other

20   party has control over the documents sought." *In re Flag Telecom Holdings, Ltd. Securities Litgation*,

21   236 F.R.D. 177,  (S.D. N.Y. 2006).

22                   2. Analysis

23           In response to Ivy Hotel's RFP, HCC did not request that Fuentes or Troutman Sanders

24   make their files available for review and possible production.  (Memo Ps&As ISO Opp'n, Doc. No.

25   45 at 8.)  HCC contends that the files are not within its possession, custody, or control because

26   Troutman Sanders is in possession of the documents and that HCC is not legally entitled to the former

27   _____

28   [3]        Examples of "substantial grounds" include situations where disclosure would violate a
            duty owed to a third-party or internal firm documents purely intended for law office use,
            e.g., assignment of particular lawyers to the matter.

                                                12

1   attorneys' work product.  (*Id.*)  Ivy Hotel, argues that HCC is required to search Troutman Sanders

2   files and records and produce responsive documents.  (Memo of Ps&As ISO Mot. Compel, Doc. No.

3   43-1 at 10.)

4           In *Moreno v. Autozone, Inc.*, 2008 WL 906510, *1 (N.D. Cal. April 1, 2008), the court

5   rejected plaintiff's argument that she could not be compelled to produce documents because her

6   former counsel was in possession of the documents.  The court found that "[p]laintiff should have the

7   legal right to obtain the documents from former counsel on demand." *Id.*  Similarly, the court in

8   *Convertino v. U.S. Dept. of Justice*, 565 F. Supp. 2d 10, 14 (D. D.C. 2008), found that responsive

9   documents in the possession of an attorney representing the responding party on another legal matter

10  were within the party's control as that term is understood in discovery.  In addition, in *Clark v. Milan*,

11  the court held that a lawyer may not invoke work product immunity against his own client in regard

12  to work product created during the course of representing that client. . . ." 847 F. Supp. 424, 427 (S.D.

13  Va. 1994); *but see Hobley v. Burge*, 433 F.3d 946 (7th Cir. 2006) (finding sanctions imposed against

14  former law firm inappropriate where the responding party never asked the firm for the materials).

15          The circumstances of this case indicate that responsive documents located in Troutman

16  Sanders and Fuentes's files are within HCC's control because it maintains the right and ability to

17  influence the former law firm to allow inspection and copying of the materials.  HCC, as the law

18  firm's former client, paid for the creation of the work product and is entitled to inspect and copy the

19  materials.

20          That being so, and because this Court has determined that Troutman Sanders documents

21  are either not protected work product or are discoverable to the extent they reflect the mental

22  impressions and opinions of HCC's agents; the Court orders production of the materials consistent

23  with this decision.  Accordingly, documents responsive to Ivy Hotel's RFP Nos. 10, 12, and 27 that

24  are in the physical custody or possession of  Troutman Sanders and are not protected by the attorney-

25  client privilege must be produced. Although attorney-client communications need not be disclosed,

26  HCC is required to produce a privilege log for all materials being withheld.  To the extent that it is

27  not clear whether any documents solely constitute work product, HCC must produce the documents

28  for the Court's *in camera* review.  The Court will then determine whether the documents must be

disclosed or may be withheld as privileged attorney-client communications.

1   ///

2   ///

3

4                                      **III.**

5                                  CONCLUSION

6          For all of the reasons stated above, the Court **GRANTS in part and DENIES in part** Ivy

7   Hotel's motion to compel.  The Court finds that confidential communications between Troutman

8   Sanders and HCC are protected by the attorney-client privilege and need not be disclosed to Ivy Hotel.

9   Conversely, the Court finds that Troutman Sanders' internal documents and materials prepared during

10  the evaluation and monitoring of the Krump matter do not constitute protected work product because

11  HCC has not established that they were prepared in anticipation of litigation.  Moreover, to the extent

12  that Troutman Sanders prepared documents and materials in anticipation of litigation, those materials

13  are discoverable because the mental impressions and opinions of HCC's agents are at issue in this

14  case, and Ivy Hotel has a compelling need for the information.  Finally, documents and information

15  located in the physical custody or possession of Troutman Sanders must be produced pursuant to the

16  terms of this decision.

17         Accordingly, HCC is ORDERED to supplement its production and provide Ivy Hotel with

18  documents responsive to RFP Nos. 10, 12 and 27 currently in the physical possession and custody of

19  Troutman Sanders.  The documents as well as a privilege log must be produced no later than

20  **November 4, 2011.**  To the extent that it is not clear whether any of Troutman Sanders's documents

21  solely constitute work product , HCC must produce those documents for the Court's *in camera* review

22  no later than **November 4, 2011**.  The Court will then determine whether the documents must be

23  disclosed to Ivy Hotel or may be withheld as privileged attorney-client communications.

24         IT IS SO ORDERED.

25

26  DATED:  October 17, 2011

27

28
                                    Hon. Bernard G. Skomal
                                    U.S. Magistrate Judge
                                    United States District Court

                                         14